We'll proceed to hear argument in the next case. United States v. Asaro. Good morning, Your Honor. Good morning. Hold on just a minute. And I apologize to counsel. I will take full responsibility for this. I did not intend, and I just didn't read closely the calendar here. So, as you can see, we obviously run a little bit over the red light anyway. But I'm going to ask the clerk please to start off with ten minutes. Do you want to reserve any time? Yes, two minutes, Your Honor. Thank you. May it please the Court, my name is Richard Langone for Vincent Asaro. The paradox in this case that begins with Booker is that an apprendee, which have evaluated the role of the jury verdict by circumscribing a defendant's sentence to the relevant statutory authorized maximum. So district courts are limited under Booker and Apprendi and its progeny to respect jury verdicts with respect to the maximum authorization allowed, sentence allowed. But yet, ironically and conversely, district courts are not obligated to respect jury verdicts of acquittal. Well, and hasn't United States v. Watts, or didn't the Supreme Court in United States v. Watts explain why that? Somewhat. And it's very significant, Your Honor, that when you think of the precedential vitality of Watts, that we keep in mind the per curiam, summary affirmance nature of it. No, no, no, no, no, no. No? The summary affirmance cases that you're talking about go back to a period in the 1970s when the Supreme Court was granting summary affirmances in cases on its appellate docket. And in the appellate docket, they had to decide things on the merits, but all they said was affirmed. And there was a lively controversy at that time where some people were saying when they just say affirmed, that has no precedential significance. That's like cert denied. And then these cases that you cite around 1980 or thereabouts were saying that kind of summary affirmance does have precedential impact, but only limited to the facts of the particular case. There is no case that you cite that refers to the process of granting certiorari, vacating the decision below, and remanding, which is what happens here, without full briefing, where the court actually writes an opinion. Is there any case that you have that refers to that kind of procedure and says that kind of authored opinion, per curiam opinion, that is done, is decided precisely because the court thinks this is such an easy issue that it doesn't need briefing, lacks precedential impact, the same precedential impact of any other decision that's decided by the Supreme Court? Well, Your Honor, I believe in, I think it was Blakely, where I may be wrong on that, one of the justices in fact spoke about that the precedential value of Watts was, and I don't want to contradict you, Your Honor, but that the precedential value was somewhat diminished due to the fact that we did not have full briefing. But regardless, though, of what arguments might have been made about Watts, hasn't this court given it precedential authority and decided numerous cases saying this is what the law is? Right. Primarily, beginning, for instance, in the United States v. Vaughn and its progeny. Yes. But first of all, the issue presented here is different than Watts, because Watts dealt with acquitted conduct in the context of the case that was on trial. So there are multiple counts charged in an indictment. You get acquitted of a few, convicted of a couple. The facts, the matters that he was acquitted of were still part of the same transactions. Why wouldn't that make it even more powerful that the jury had acquitted the defendant right there in that very trial of these acts, and then the court nevertheless takes account of that to increase the offense level for that particular offense of conviction? It would seem to me that's a stronger case for giving weight to the jury verdict than this one, where what the court is doing is simply taking other stuff, other allegations about a defendant that it believes are established into account in assessing his general character. I agree, Your Honor. And I think that that's the distinction I'm trying to make. What happened in Watts, I think you might have misunderstood Judge Lynch's question. I'm sorry. Judge Lynch says, why isn't the argument that—I'm sorry, I will never presume to speak for Judge Lynch. I'm presuming the argument— Even when he's wrong, he's not. But I'm presuming— You're arguing, or you're not, and at least help me make sure I understand your argument, that the court here took the conviction and then, in assessing what sentence to impose, went back and looked at an earlier case and looked at conduct that was charged in that case, which has nothing to do with this case, and took into account conduct in that case on which your client was acquitted. Yes. That is exactly my position. All right. And Judge— And I'm asking you, isn't that an easier case to allow the court to take it into account? Because it's just going to the general assessment of the defendant's character, whereas in Watts, the court was actually increasing the offense level for the conduct of which he had been convicted based on conduct of which he was acquitted. That seems a harder case in terms of overturning the jury's verdict, because as if the jury never had said anything, the judge just says, in effect, you were convicted of all this stuff, and that's going to determine how serious this crime is. Here, the court's just doing what courts have done from time immemorial, to say there are various allegations against you. Some of them have never been adjudicated at all. But we're looking back at the entire content of your character as reflected in your entire life, the facts thereof being found by a preponderance of the evidence, to decide that within the limits of the punishment for the crime of which you're convicted here, you're the kind of guy who needs a higher sentence within those limits rather than a lower one. Well, I think what's going on, first, it should be a functional analysis of the law and the principles as they're operating in this context. When you're talking about constitutional principles, we're weighting competing interests and balancing competing interests. It's not an ineluctable logical proposition. You draw a line somewhere. I think that there's a real difference. An acquittal has special significance in our constitutional scheme. The solemnity of it, the pronouncement of it, the idea of repose, there is so much associated. I took a verdict yesterday in a case in the Eastern District. And, you know, when you sit and you wait for that pronouncement, it's a profound moment in a person's life. And it should have meaning. And that meaning, that means it should be, if a jury acquits somebody of a crime, especially a crime that's unrelated to the instant offense, you know, in the Asaro matter, they're taking conduct 60 years old and 50 years old that he's acquitted for, acquitted of. And then they're going to use that conduct that a jury has specifically rejected and say, well, I find by preponderance of the evidence that the jury's verdict is not the last word on it. And I'm going to consider that not only in imposing sentence, but in upwardly departing. And that was a thing that was a chagrin to Justice Scalia. You know, he said, you know, you start with the guidelines and that's the first start of the analysis, the proper guideline range. And he says, well, when you get out of, once you're going to go over the presumptively appropriate guideline range, you know, you're dealing with state action. You're enhancing the sentence, which even though the district court, it's now advisory, the guidelines are no longer mandatory. But that is still where you start from. And I guess Justice Scalia's position on that was that, you know, once you go above into the variance range where there's got to be significant reasons for departure and you've got to state these reasons. It is a dicey proposition to start using acquitted conduct as the, in an unrelated matter, as the basis to be enhanced. There's an evidentiary standard by which that has to be proven or determined. That is, but you know. Why is that different from somebody accused of careless and negligent driving and we'll say tragically killing somebody, but gets acquitted of that. And then the estate of the person sues that person and proves by a preponderance of the evidence that the person was careless and negligent. Well, I think the fundamental difference there, Your Honor, is the civil context. This is a criminal context and we're talking about freedom. It's the same standard of proof. Well, but the interest. And you could say, hey, I was acquitted of that. But the interest is different and the constitutional significance of state action, where you're dealing with state action affecting acquitted conduct, is really what the framers were intending to protect. You have, so you get arrested, you're acquitted of a murder that's 50 years old and 50 years later you get arrested for an arson. Or it doesn't even have to go that far. In other words, you could have, it promotes the possibility. What's the time difference here? Let's use this one. 50 years. 59 was. What's the time difference between the acquittal and the use of it in this case? Well, that was 3 years. That was 3 years. But I respectfully submit that it's not the date of the trial that matters. Well, no, but you're arguing acquittal. Anyway, you have reserved two minutes for rebuttal. Thank you, Your Honor. You're welcome. And thank you, Mr. Lengel. Mr. Edelman. Thank you, Your Honors. And may it please the Court, Keith Edelman for the United States, and I was one of the prosecutors below. As Your Honors mentioned, since the Supreme Court's decision in 1997 in Watts, it has been clearly established law that if a district court finds that a defendant committed conduct by preponderance of the evidence, and that conduct is relevant to sentencing, the district court may take that into consideration in imposing sentence for the count of conviction. That applies whether or not the underlying acquitted conduct has to do with the, quote, same case or out of the same nucleus of operative facts or not. The rule is because, as Watts explains, an acquittal is not a finding of fact as to the underlying acquitted conduct. It merely means there was a jury found there was a reasonable doubt as to those charges. And using that acquitted conduct in the count of, in imposing sentence in the count of conviction, does not punish the person for the acquitted conduct. It punishes the person for the offense of conviction for having committed that in the manner in which the acquitted conduct shed some light on. Here, there is an. . . There are limitations on that, right? I mean, there's a concept that is referred to in the cases as the tail wagging the dog, right? Is this that case? I don't believe so, Your Honor. I don't believe that there is necessarily a limit on that, but there is always the backdrop of a substantive reasonableness challenge, that if the sentence is so much higher than the other 3553A factors in light of the guidelines allow, that is always there. But I don't believe that there is a limit in terms of, quote, how much acquitted conduct can be used in imposing sentence. When Congress sets a sentencing statutory scheme of zero to 20 years, it is said there might be some arsonists who deserve a sentence of zero. There might be some that deserve a sentence of 20. And so, so long as the district court finds by preponderance of the evidence all of the relevant facts and picks somewhere in between there, I submit that that still comports with all the elements of the Constitution, and the backdrop of the substantive reasonableness challenge can always be used and challenged, which I note is not the case here. Mr. Assar also does not challenge the factual finding by the district court as to its conclusions as to his acquitted conduct. Mr. Assar also does not challenge that this conduct is relevant under 3553A. Indeed, Judge Ross said she could hardly think of things that were more relevant to assessing the defendant's history and characteristics than his lifetime of violent crime and his allegiance to a violent criminal organization. So against that backdrop, we submit that Judge Ross was entitled to consider the acquitted conduct and did so appropriately. Briefly, as to the ineffective assistance of counsel claim, there's no reason here we submit for Your Honors to do anything other than abide by the general rule that such claims should be raised on collateral attack. Mr. Assar now acknowledges the record is not sufficient. He is now claiming that he was not told that the acquitted conduct could be used by Judge Ross at sentencing. Obviously, that's something that needs development to the extent he wishes to make those allegations, but it would be a waste of resources to remand the case now and hold that hearing when the issue regarding the propriety of using the acquitted conduct at all is right now before Your Honors. And lastly, just to the extent that Your Honors are inclined to remand the case, we don't believe reassignment is appropriate. There was no allegation of Judge Ross having any sort of bias, and this, if anything, was a mistake of law as to what she could or could not consider. And so, therefore, there is no reason for reassignment. Unless Your Honors have any other questions, we submit on our papers and ask that the judgment be affirmed. Thank you, Mr. Edelman. Thank you. Thank you, Your Honors. First of all, with respect to relevant conduct, 1B1.3A1A of the sentencing guidelines defines itself as conduct related to the commission of the offense. And I submit with respect to this idea of relevant conduct that, in fact, Watts, that's exactly what Watts was dealing with. Watts was dealing with acquitted conduct in the context of the crime of conviction, and therefore it was permissible because it was part of the contextualization. And this concept of contextualization, I think, is relevant for purposes of cabining the scope of discretion that should be accorded district courts in these situations. It's this idea of the crimes, do they present a signature feature of activity so that there's identifying features that makes, there's some probity relevant to the crime of conviction. And with respect to challenging the fact findings, I think we did go into the fact that Gaspar Volante was a, we challenged his veracity as an accomplice. Remember, this person came in off the streets, just walked in off the streets and said, I don't want to be in the mafia anymore, and I want you to pay me. I think the federal government wound up paying him a couple million dollars over a few years to be an informant. And under those circumstances, it's quite obvious why the jury resoundingly rejected the government's position, because they took somebody off the street who decided he wasn't going to be a mobster anymore, but he wanted to get paid to be an informant. And that was what that was about. With respect to the ineffective counsel, and this goes to the notice issues, the due process issues that really stem and tie into the Nelson versus Colorado analysis. But if somebody's going to plead guilty and his sentence can be enhanced dramatically for things that he's been acquitted of, even in the distant past, well, then that to me would seem to be a very serious collateral consequence that maybe then has to be, the defendant needs to be made aware of before he enters into plea agreements in these kind of situations. Mr. Saro was completely blindsided in that he was not expecting that they were going to be using acquitted conduct in the prior case. In this case, in fact, I spoke to his attorney, and she said she had never seen it before, at least in the Second Circuit. Thank you, Mr. Langer. Thank you, Your Honor. Thank you both. We'll reserve decision. The final case on our calendar is U.S. v. Hiltz. That's on submission. Please adjourn court.